**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

DEBRA PICURI,

  Plaintiff,                                 CASE NO.:  9:18-cv-81683-DLB

-VS-

OCWEN LOAN SERVICING, LLC,

  Defendant.
_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, DEBRA PICURI (hereinafter "Plaintiff"), by and through the undersigned counsel, and sues Defendant, OCWEN LOAN SERVICING, LLC (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like OCWEN LOAN SERVICING, LLC from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

1

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analysts estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016."
https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The current principal place of business of Defendant is in Palm Beach County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1), as it is the judicial district in the State where the Defendant resides.

## **FACTUAL ALLEGATIONS**

9. Plaintiff is a natural person, and citizen of the State of Pennsylvania, residing in the city of Bridgeport located in Montgomery County, Pennsylvania.

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is a corporation which was formed in Delaware with its principal place of business located at 1661 Worthington Road #100, West Palm Beach, Florida 33409, and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

17. Plaintiff knows that some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

18. Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received from Defendant.

19. Plaintiff will testify that she received approximately four calls per day from Defendant.

20. Plaintiff will testify that different agents from Defendant placed these calls, which is a common indicator of an autodialer.

21. Plaintiff will testify that Defendant used an autodialer because she always heard a pause when she answered her phone before an Ocwen representative came on the line.

22. Plaintiff will testify that she received prerecorded messages from OCWEN LOAN SERVICING, LLC.

23. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (484) *** - 6282, and was the called party and recipient of Defendant's calls.

24. Plaintiff was the subscriber, regular user and carrier of the cellular telephone number (484) ***- 1503, and was the called party and recipient of Defendant's calls.

25. Defendant placed an exorbitant number of calls to Plaintiff's cellular telephones (484) *** - 6282 and (484) ***- 1503 in an attempt to collect on a mortgage debt.

26. On several occasions since Defendant's campaign of calls began, Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

27. In or about January of 2010, Plaintiff answered a call from Defendant, met with an extended pause, held the line and was eventually connected to a live agent of Defendant. Plaintiff instructed Defendant's agent/representative to cease calling her cellular telephone number.

28. During the aforementioned call of January of 2010 with Defendant's agents, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

29. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

30. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

31. Additionally, in or about January of 2013, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular phone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

32. Further, in or about July of 2018, Plaintiff again answered a call from Defendant, met with an extended pause, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular phone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

33. On at least three (3) separate occasions, Plaintiff has answered a call from Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

34. Defendant used the following number to initiate calls to Plaintiff, (800)-746-2936 along with multiple other numbers.

35. Defendant has placed approximately five hundred (500) calls to Plaintiff's aforementioned cellular telephone number. Due to the tremendous volume of calls Plaintiff received over a lengthy period of time, she was not able to properly catalogue each and every call and it is expected that a review of Defendant's records will reflect all of the unwanted calls placed to Plaintiff.

36. Defendant continues to place unwanted calls to Plaintiff's cellular telephone number.

37. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

38. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

39. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

40. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

41. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

42. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

43. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

44. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

45. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

46. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

47. From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

48. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

49. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

50. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were

answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

51. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

52. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

53. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

54. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress, annoyance, headaches, high blood pressure, and aggravation.

## COUNT I
**(Violation of the TCPA)**

55. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty four (54) as if fully set forth herein.

56. Defendant knowingly and willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

57. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, DEBRA PICURI, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, OCWEN LOAN SERVICING, LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

58. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty four (54) as if fully set forth herein.

59. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

60. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

61. Defendant began calling Plaintiff in 2010, and the unwanted calls continue to the present day.

62. Defendant calls Plaintiff up to four times per day.

63. Defendant's calls interrupted Plaintiff's job as a school bus driver, which requires attention to both the road conditions as well as the student passengers.

64. Defendant's calls woke Plaintiff up in the morning.

65. Defendant's calls interrupted Plaintiff's mealtimes with her family.

66. Defendant's calls interfered with Plaintiff's infant granddaughter sleeping soundly.

67. Defendant's calls came at inconvenient times, such as when Plaintiff was taking her infant granddaughter to her pediatrician and other medical specialists.

68. Defendant's calls affected Plaintiff's ability to perform caretaking duties for her disabled husband.

69. Plaintiff attempted to ask Defendant's agents to stop calling because she was in a modification program, to no avail.

70. Plaintiff informed Defendant's agents about the unwanted calls impacting Plaintiff's normal activities, to no avail.

71. Defendant's agents continue to place unwanted calls to Plaintiff's cellular telephone ending in …6282.

72. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

73. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, DEBRA PICURI, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, OCWEN LOAN SERVICING, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Janelle Neal*
Janelle Neal, Esquire
Florida Bar No.: 774561
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
JNeal@forthepeople.com
MMartinez@forthepeople.com
*Attorney for Plaintiff*